## APRIL TERM, 1771.

CROMWELL's Lessee *vs.* DULANY, *et al.*

EJECTMENT for a tract of land called *Kinsey*, lying in Anne-Arundel county. Verdict for the plaintiff.

The following *point* was saved for the court's opinion, to wit:

The tract of land called *Kinsey*, was granted by patent, bearing date the 13th February 1659, to *Hugh Kinsey*, and his heirs, in fee, containing 400 acres.

*Richard Johns*, and *Elizabeth his wife*, daughter of *Hugh Kinsey* the grantee, conveyed by deed, bearing date the 20th March 1681, the land in question called *Kinsey*, to *William Cromwell*, and his heirs, except that part which lay in the elder survey of *Duck Cove*.

The plaintiff, to make out his title, produced the will and codicil, or additional will, of *William Cromwell*, dated the 19th of June 1680, wherein are the following devises: "Item. I will and bequeath my plantation I "now live on, called *Cromwell's Adventure*, with 100 "acres more adjoining to it called *Mascall's Hope*, to my "dear and loving wife *Elizabeth Cromwell*, during her life; "but when my son *William* shall come to the age of se-"venteen, my will is that he shall have the adjoining "land to my plantation, called *Mascall's Hope*, and after "the decease of my dear wife aforesaid, my will is, that "he enjoy my part of the plantation that is between my "brother *John* and me, known by the name of *Crom-"well's Adventure*; the said land I leave to my son *Wil-"liam*, and the lawful heirs of his body, for ever, *and to "continue in the name of Cromwell, and to the nearest of "blood after the decease of all of the name of Cromwell.*"

"Item. I will and bequeath unto my loving son, *Tho-"mas Cromwell*, the tract of land that I have lying "upon the N. side of *Curtion's* Creek, being laid out for "134 acres, known by the name of *Hunting Quarter*, "and the heirs of his body lawfully begotten for ever, "*and so to return at his decease to the next heir of the "name as long as there is any alive, and after, to the near-"est of blood*; also my will is, that my son *Thomas* shall "have that tract of land that lieth in Whetstone Neck, "lying by David's Pond, known by the name of ———, "laid out for 100 acres, to him and his heirs for ever: "that my intent and meaning is, *that none of the land be "sold by either of my sons, or their heirs, but to continue "in the name as long as there is any alive, and after, to the "nearest of blood.*"

The *Codicil*, or *additional will*, is as follows:— "My will is, that after my debts are paid, and my "wife has had her thirds, that my land and per-"sonal estate may be equally divided amongst my chil-"dren; and my will is, that this above mentioned will, "dated the *19th of June* 1680, in full force and power "and verity. I having more land than is mentioned "above thought fit to make this addition, having more "children, that every one might have a share,—my mean-

ing is, that my land may run to my heirs *in the same manner and form as it is mentioned in the above said will.*"

The will and codicil were proved on the 1st of May 1683. The land in dispute was purchased by the said *William Cromwell* from *Johns* and wife, after the making of his said will, and before his making the said codicil, to wit, on the 20th of March 1681.

The Defendants objected that the said will and codicil passed to the devisee, *William Cromwell,* the particular lands mentioned in the said will to be devised to him in tail; to the devisee *Thomas Cromwell,* (who was proved to be heir at law to the devisor,) the particular lands mentioned in the said will to be devised to him in tail; and to the same *William Cromwell, Thomas Cromwell,* and one other son of the devisor, named *Philip Cromwell,* (born between the making of the said will and the time of making the said codicil,) the land in question in tail in common; and that by the death of *Philip,* (who was proved to have died without issue,) the part of *Philip* descended in fee to *Thomas,* which passed to *George Ashman,* by the devise of the said *Thomas,* in fee, the said *Thomas* having by his will duly made, devised the said land in question to the said *Ashman* in fee. And therefore that the plaintiff had failed in shewing title as to two undivided third parts of the land in question, there still being issue in being of *William,* the devisee, under whom the defendants claim. Which point is saved for the opinion of the court; and the verdict which may be given in this cause for the plaintiff is agreed to be subject to the court's opinion on the said point.

The testator had issue three sons—*Thomas* the eldest, *William* and *Philip. William,* the son, entered into and possessed the particular lands devised him by the will of his father in severalty, which were of more than the value of one-third part of the real estate of the testator.

*Thomas,* the eldest son, under the devise to himself, and in right of his brother *Philip,* possessed all the rest of the lands, and amongst others, was seised of the land in question called *Kinsey,* in severalty; and by his will in writing, dated 17th July 1723, devised the same to his brother *George Ashman,* in fee. The devisee entered, and after holding possession some time, relinquished and surrendered the same to *Thomas Cromwell,* eldest son and heir at law of *Thomas Cromwell,* deceased.

*Thomas,* the son, entered and conveyed by deed to his uncle *William Cromwell,* for his own life only. *William Cromwell* conveyed to the defendants, in fee. *Thomas,* the son, is dead without issue, and the lands in question

are claimed by *Oliver Cromwell*, lessor of the plaintiff, the said *Oliver* being the eldest brother and heir at law of *Thomas Cromwell, junior.* ·

The point saved is upon the will and codicil of *William Cromwell*, the elder.

*Johnson*, for the defendants, objected that the will and codicil of *William Cromwell* passed to *William* the particular lands mentioned in the will, to him in *tail*; to *Thomas* in *tail*; and to the testators three sons *William, Thomas* and *Philip*, the land in dispute called *Kinsey*, in *thirds*, as tenants in *tail* in common; and that on *Philip's* death, without issue, his third part descended in *fee* to *Thomas*, who devised it to *Ashman* in fee, and that *Ashman* is thereby entitled to one third part of *Kinsey*. He contended, that the defendants, (who claim under the issue of *William*, now living.) are entitled to one other third. That the lessor of the plaintiff. *Oliver*, as heir to *Thomas*, can only recover *that third* part of *Kinsey* devised to *Thomas* by *William Cromwell*.

He cited *Cro. Jac.* 655—No cross remainders can arise between *more than two*, from the incertainty, inconvenience and confusion, it would create—4 *Bac. Ab.* 382. *Dyer*, 303. *Hob.* 33. *Fitzgib.* 30. *Dyer*, 333. *b.* 2 *Jones*, 172. *Carter*, 173. 2 *Black.* 381. *Freem.* 484. 1 *Vent.* 224. 2 *Show.* 139. *Vaugh.* 262. *Savil*, 92.

*Hall*, for plaintiff. The tract of land called *Kinsey* was intailed on *Philip*; on his death, *without issue*, it descended *in tail*, not in *fee*, to his eldest brother *Thomas*, to comply with the express words of the devisor. A court cannot construe cross remainders by *implication* between more than two, but devisor may create by *express limitation*, between as many as he pleases. Cited *Dyer*, 333. *b. Chapman's* case. *Dyer*, 303, *Hob.* 33. sir *T. Jones*, 172. *Poll.* 425, 431, to shake *Cro. Jac.* 655.

*Johnson*, in reply. The question is on the codicil, and can only affect the land called *Kinsey*. By the word *heirs* the devisor meant *all his children*, and therefore will let in all three to part of *Kinsey*. There is a limitation to *William*, as well as to *Thomas*; if it is only to *Thomas*, yet it is *in fee*, and therefore devised by him to *Ashman*. There is no express limitation in the will. *The blood* will extend to *collateral*. The *name* will extend to strangers. *Alienation* is *prohibited* only as to his sons, and their heirs *respectively*, otherwise it would create a perpetuity, which the law abhors and would reject. The words of reference must not only create an estate in *tail* to *Philip*,

but also to carry over an estate in *tail* to *Thomas.* To
whom is the limitation over? It cannot be by way of
cross remainders, because to three persons. Must the
reference relate to the devise, and the limitation to *Tho-
mas* or *William?* They differ, are uncertain, therefore
cannot refer to either. If *Thomas* took a reversion in
fee on the death of *Philip,* the plaintiff has no title to any
part. 1 *Roll. Ab.* 383, *s.* 1, 2. *Co. Litt.* 20. *b.* 3 *Lev.*
70. A partition by *parol* was good, *(Co Lit.* 169. *a. Bro.
Ab. tit. Partition,* 123, *b. s.* 27. 32.*)* before the year 1725,
when the statute of 29 *Car. II.* of frauds and perjuries,
was *first* introduced into this province—*Vide, Vin. Ab.
tit. Partition,* 221, *pl.* 8. *Bac. Ab. tit. Tenants,* 207, (in
margin.) *Co. Lit.* 169, *s.* 250. The king's grant shall
be expounded most beneficially to the patentee—*Vin. Ab.
tit. Prerogative,* 153, 4. 2 *Inst.* 282, 496, 497. 6 *Co.*
5, 6. *Montyn's* case. *Vin. Ab. tit. Grant,* 59, *pl.* 14, 15.

THE PROVINCIAL COURT gave judgment on the point
saved, and verdict for the *Plaintiff.* The defendants
brought a writ of error to the Court of Appeals, and at
October term 1772, the case was entered *struck off,* in
that court.